# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00187-COA

**NANCY PIGOTT**                                                              **APPELLANT**

**v.**

**JEFFREY YOUNG TAYLOR, D.M.D**                                      **APPELLEE**

DATE OF JUDGMENT:                01/13/2016
TRIAL JUDGE:                     HON. DALE HARKEY
COURT FROM WHICH APPEALED:       JACKSON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          SCOTT CORLEW
ATTORNEYS FOR APPELLEE:          JESSICA B. MCNEEL
                                 JOHN A. BANAHAN
NATURE OF THE CASE:              CIVIL - PERSONAL INJURY
TRIAL COURT DISPOSITION:         GRANTED SUMMARY JUDGMENT TO
                                 THE APPELLEE
DISPOSITION:                     AFFIRMED - 03/14/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., CARLTON AND WESTBROOKS, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.     Nancy Pigott filed a medical-malpractice complaint against Dr. Jeffrey Taylor and asserted that Dr. Taylor was negligent in performing dental-implant surgery on her. The Jackson County Circuit Court concluded that the statute of limitations on Pigott's claim expired before Pigott ever filed her complaint. *See* Miss. Code Ann. § 15-1-36(2) (Rev. 2012). The circuit court therefore granted Dr. Taylor's motion for summary judgment and dismissed Pigott's complaint with prejudice. Finding no error in the circuit court's grant of summary judgment, we affirm.

## FACTS

¶2. On April 3, 2014, Pigott mailed a notice-of-claim letter to Dr. Taylor. She then filed a medical-malpractice lawsuit against him on June 17, 2014. According to Pigott, Dr. Taylor breached the standard of care he owed to her when he negligently performed dental-implant surgery on her.

¶3. Pigott stated that she consulted Dr. Taylor on July 2, 2009, following a referral from her general dentist. On February 19, 2010, Dr. Taylor performed surgery to place an implant in the left second bicuspid position of Pigott's mandible. Pigott asserted that she experienced numbness in her lip following the surgery. In an attempt to alleviate Pigott's numbness, Dr. Taylor performed a second procedure on February 24, 2010, to back out Pigott's implant by three millimeters. Pigott regained some sensation following the repositioning of the implant, but she stated in her complaint that she continued to experience pain in her lip, jaw, and teeth, as well as numbness in her chin. Despite this continued pain and numbness, Pigott's final visit to Dr. Taylor occurred on August 9, 2011.

¶4. On February 10, 2012, Pigott referred herself to Dr. Thomas Yearwood, a pain-management specialist, for "pain and pressure sensation to her left tongue and mandible area." According to Dr. Yearwood's notes, Pigott stated the pain began after her dental-implant surgery two years earlier and that she had suffered from both pain and numbness ever since the surgery. Dr. Yearwood determined that Pigott had suffered dental trauma, which caused trigeminal neuralgia to her inferior alveolar nerve. Following an injection to the affected area on March 13, 2012, Dr. Yearwood found that Pigott experienced

2

"substantial relief [from] her usual and customary pain pattern[.]"

¶5. On March 14, 2013, almost a year after consulting Dr. Yearwood, Pigott visited Dr. Ronald Prehn. Images taken by Dr. Prehn showed that the dental implant's lower left portion was in the nerve sheath of Pigott's left mandibular nerve. Like Dr. Yearwood, Dr. Prehn concluded that Pigott had suffered an injury to her trigeminal nerve. Dr. Prehn also diagnosed Pigott with disc displacement, capsulitis, and tendonitis of her temporo mandibular joint.

¶6. As stated, Pigott filed her medical-malpractice complaint against Dr. Taylor on June 17, 2014. In her complaint, Pigott asserted that Dr. Taylor "positioned the implant [in] such a way as to improperly contact, impinge upon, and create [an] injury to Pigott's left inferior alveolar nerve." On December 8, 2014, Dr. Taylor filed his answer and affirmative defenses to Pigott's complaint. In addition to his other defenses, Dr. Taylor asserted that the applicable two-year statute of limitations barred Pigott's complaint against him for dental negligence.

¶7. On October 16, 2015, Dr. Taylor filed a motion for summary judgment. In her response to Dr. Taylor's summary-judgment motion, Pigott argued that disputed issues of material fact existed, especially as to when she first became aware of Dr. Taylor's negligence. In an affidavit attached to her response, Pigott contended she did not actually discover that Dr. Taylor's negligent placement of the dental implant had caused her pain and numbness until she visited Dr. Prehn in March 2013. Because she filed her complaint within two years of consulting Dr. Prehn, Pigott asserted that the statute of limitations posed no bar

3

to her claim.

¶8.     On January 13, 2016, the circuit court entered an order on Dr. Taylor's summary-judgment motion. The circuit court found that a genuine issue might exist as to when Pigott possessed actual knowledge of Dr. Taylor's alleged negligence. Even so, the circuit court determined that the crux of the issue was whether a genuine issue of material fact existed as to when Pigott should have discovered, through the exercise of reasonable diligence, the causative relationship between her injury and Dr. Taylor's alleged negligence.

¶9.     The circuit court acknowledged Pigott's admission "that she learned for certain that Dr. Taylor was legally negligent in [March 2013] when [Dr. Prehn] show[ed] [her] x-rays of the nerve injury she suffered during the implant procedure." The circuit court found, however, that Dr. Yearwood's diagnosis a year earlier in 2012 was "essentially the same, in all respects, as the diagnosis of Dr. Prehn when he reviewed [Pigott's] x-rays with [her] the next year . . . ." Thus, the circuit court concluded that Pigott knew, or should have reasonably known, of Dr. Taylor's alleged negligence in March 2012 when she consulted Dr. Yearwood.

¶10.    After giving Pigott the benefit of all tolling periods, the circuit court determined that the statute of limitations on Pigott's claim expired, at the latest, on May 14, 2014. Because Pigott waited until June 17, 2014, to file her complaint, the circuit court found the statute of limitations barred Pigott's cause of action. As a result, the circuit court granted Dr. Taylor's motion for summary judgment and dismissed Pigott's complaint with prejudice. Aggrieved by the circuit court's judgment, Pigott appeals.

4

**STANDARD OF REVIEW**

¶11.    The Mississippi Supreme Court has stated:

> The issue of whether the applicable statute of limitations has run is a question of law.  In reviewing the grant or denial of a motion for summary judgment, the standard of review is de novo.  If no genuine issue of material fact exists and the moving party is entitled to summary judgment as a matter of law, summary judgment should be entered in that party's favor.  The burden is upon the moving party, and the evidence should be viewed in the light most favorable to the nonmoving party.

*Stringer v. Trapp*, 30 So. 3d 339, 341 (¶9) (Miss. 2010) (internal citations omitted).

**DISCUSSION**

¶12.    On appeal, Pigott argues the circuit court erred by finding that the statute of limitations on her claim began to run when she consulted Dr. Yearwood in March 2012.  Pigott claims the circuit court's ruling assumes the following:  (1) Dr. Yearwood was qualified to diagnose the cause of her nerve injury; (2) Dr. Yearwood told her the nerve was the cause of her problem; (3) Dr. Yearwood told her that Dr. Taylor was negligent; (4) Dr. Yearwood discussed his records with her; and (5) Dr. Yearwood's records accurately capture his treatment and discussions with her.  Asserting that genuine issues of material fact still exist as to "what [she] knew and when[,]" Pigott contends that the circuit court erred by granting summary judgment to Dr. Taylor.  She therefore asks this Court to reverse the circuit court's judgment and to remand the case for further proceedings.

¶13.    Section 15-1-36(2) provides that a medical-malpractice action must be "filed within two (2) years from the date the alleged act, omission[,] or neglect shall or with reasonable

diligence might have been first known or discovered . . . ."[1]  In *Stringer*, the supreme court explained:

> To determine when a plaintiff can be said to have sufficient knowledge to commence the running of the statute of limitations, this Court has espoused the following:  The operative time is when the patient can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner. Said another way, the statute of limitations is tolled by the discovery rule until the plaintiff (1) has knowledge of the injury, (2) has knowledge of the cause of the injury, and (3) knows the relationship between the practitioner and the injury.
>
> The question of whether a statute of limitations is tolled by the discovery rule often turns on the factual determination of what the plaintiff knew and when.  Thus, occasionally the question of whether the suit is barred by the statute of limitations is a question of fact for the jury; however, as with other putative fact questions, the question may be taken away from the jury if reasonable minds could not differ as to the conclusion.

*Stringer*, 30 So. 3d at 342 (¶¶11-12) (internal citations and quotation marks omitted).

¶14.   In the present case, Dr. Taylor's alleged negligence occurred on February 19, 2010, when he performed Pigott's dental-implant procedure.  On appeal, Pigott argues that she first discovered Dr. Taylor's alleged negligence in March 2013 when she consulted Dr. Prehn. By contrast, Dr. Taylor asserts that, due to the nonlatent nature of Pigott's alleged injury and her failure to exercise reasonable diligence, the discovery rule was inapplicable, and the statute of limitations on Pigott's claim began to run on February 19, 2010, when the dental surgery occurred.

¶15.   Alternatively, Dr. Taylor contends that, even if the discovery rule applied to Pigott's

---

[1] *See Pittman v. Hodges*, 462 So. 2d 330, 333 (Miss. 1984) (finding the patient timely filed his dental-malpractice complaint within two years from the earliest date that he could reasonably have discovered the effect of the oral surgeon's negligence).

claim, the statute of limitations began to run no later than March 13, 2012, when Pigott visited Dr. Yearwood. Dr. Taylor argues reasonable minds cannot disagree that, as a result of her visit with Dr. Yearwood, "Pigott knew, or with the exercise of reasonable diligence should have known, that she had an actionable injury" against Dr. Taylor. Because Pigott filed her complaint on June 17, 2014, over two years after seeing Dr. Yearwood, Dr. Taylor asserts that the statute of limitations had already expired on her claim and that the circuit court therefore properly granted summary judgment.

¶16. As the parties acknowledge, this case pertains to a nonlatent injury. In its order granting summary judgment, the circuit court noted that Pigott's complaints of pain and numbness began immediately after Dr. Taylor performed the implant procedure. The circuit court further found that Pigott's complaints had continued unabated since the time of the procedure. In fact, the circuit court concluded that "[a]ll medical records submitted establish that . . . Pigott correlates the onset of her injury with the implant procedure."

¶17. As the circuit court also recognized, despite whether an injury is latent or nonlatent, section 15-1-36(2) applies a reasonable-person standard to determine the running of the statute of limitations in medical-malpractice cases. *See Sutherland v. Estate of Ritter*, 959 So. 2d 1004, 1008 (¶12) (Miss. 2007) ("The inquiry does not center on a latent injury, but rather on the date the alleged act, omission[,] or neglect shall or with reasonable diligence might have been first known or discovered." (citation and internal quotation marks omitted)). The *Sutherland* court explained:

> [I]n medical[-]negligence cases, we must focus our inquiry on when a plaintiff, exercising reasonable diligence, should have first discovered the negligence,

7

rather than the injury. . . . [T]he discovery rule may apply in cases where the injury is not latent at all, but where the negligence which caused the known injury is unknown. For instance, a patient who undergoes a medical procedure may develop serious complications which are clearly known. However, if the patient has no reason to know that the doctor's negligence in performing the procedure caused the complications, the discovery rule will apply, even though the injury itself is not latent at all.

*Id.* at 1008-09 (¶12).

¶18. Here, the circuit court acknowledged Pigott's claim that she only discovered Dr. Taylor's alleged negligence in March 2013 following her visit with Dr. Prehn. Even though the circuit court determined that Pigott had presented a genuine issue as to when she obtained actual knowledge of the alleged negligence, the circuit court still found that the discovery rule only tolled the statute of limitations so long as Pigott, while exercising reasonable diligence, neither knew nor could have known of the causative relationship between her injury and Dr. Taylor's conduct. In discussing this issue, the circuit court found that Dr. Yearwood's diagnosis in March 2012 was "essentially the same, in all respects, as the diagnosis of Dr. Prehn . . . the next year, on March 14, 2013 . . . ." Based on its review of the evidence, the circuit court concluded that, by the end of her visit with Dr. Yearwood on March 13, 2012, "reasonable minds cannot differ that . . . Pigott knew of her injury, knew the cause of her injury, and . . . with reasonable diligence, should have known of the causative relationship between the injury and the conduct of Dr. Taylor." Thus, the circuit court determined that, at the latest, the statute of limitations on Pigott's claim began to run in March 2012.

¶19. As the record reflects, in his notes after his initial visit with Pigott on February 10,

2012, Dr. Yearwood wrote that Pigott presented "with complaints of pain and pressure sensation to her left tongue and mandible area." Dr. Yearwood further stated that Pigott claimed the pain began after her dental implant in February 2010. Based on his evaluation, Dr. Yearwood concluded that Pigott had suffered dental trauma and trigeminal neuralgia involving her inferior alveolar nerve. To address the neuralgia, Dr. Yearwood recommended that Pigott receive an injection.

¶20.   After Pigott received the recommended injection on March 13, 2012, Dr. Yearwood entered a follow-up note. In the note, Dr. Yearwood reaffirmed his preoperative diagnosis that Pigott had experienced dental trauma and trigeminal neuralgia to her inferior alveolar nerve. In discussing the injection procedure, Dr. Yearwood observed that the injection had provided Pigott with significant pain relief. According to Dr. Yearwood, "[t]his clearly demonstrate[d] the neuropathic component of [Pigott's] pain [was] the overriding component, and this [was] associated with neuralgia of the [i]nferior [a]lveolar [n]erve secondary to trauma."

¶21.   Almost a year after seeing Dr. Yearwood, Pigott consulted Dr. Prehn on March 14, 2013. Like Dr. Yearwood, Dr. Prehn diagnosed Pigott with an injury to her trigeminal nerve. Based on images he took of Pigott's mouth, Dr. Prehn found that Pigott's dental implant was in the nerve sheath of her left mandibular nerve. In addition to the injured trigeminal nerve, Dr. Prehn concluded that Pigott suffered from disc displacement, capsulitis, and tendonitis.

¶22.   Upon review, we find no error in the circuit court's grant of summary judgment to Dr. Taylor. The record reflects that Pigott, by exercising reasonable diligence, should have

reasonably discovered Dr. Taylor's alleged negligence following her self-referral to Dr. Yearwood in March 2012. As a result, the two-year statute of limitations on Pigott's claim expired by the time she filed her complaint on June 17, 2014. Because the record fails to reflect a genuine issue of material fact, we find this assignment of error lacks merit.

¶23. **THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**