IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 14, 2024 Session

DARLENE ANN PRICE ET AL. v. THE CENTER FOR FAMILY AND IMPLANT
DENTISTRY, PLLC

Appeal from the Law Court for Sullivan County
No. C16123    John S. McLellan, III, Judge

No. E2023-01100-COA-R3-CV

A dental patient brought this negligence action against the dentist who performed implant procedures on her and his dental practice. After the patient voluntarily dismissed the case against the dentist, the trial court granted the dental practice's motion for summary judgment. We have determined that genuine issues of material fact exist as to when the dental patient reasonably should have discovered that the dentist had acted wrongfully. We, therefore, reverse the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Law Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Harold Wayne Graves, Johnson City, Tennessee, for the appellants, Darlene Ann Price and Bill Price.

James N. L. Humphreys, Kingsport, Tennessee, for the appellee, The Center for Family and Implant Dentistry, PLLC.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Darlene Price began seeing Dr. Andrew MacConnell at the Center for Family & Implant Dentistry ("the Center") in April 2019.[1] She decided to go through the process of having Dr. MacConnell extract all of her teeth and then install dental implants to allow for

---

[1] Because this case was resolved at the summary judgment stage, we take our factual summary from the undisputed facts agreed to by the parties and the documents in the record.

removable dentures, which would be held in place by posts installed in the bones of her mouth. Prior to surgery and treatment, Ms. Price signed several informed consent forms advising her of the risks, including swelling, pain, bruising, jaw breakage, numbness, and infection. On June 6, 2019, Dr. MacConnell extracted all of Ms. Price's teeth and installed implants in the bones of her mouth. On August 29, 2019, he placed upper and lower wax rims in her mouth.

On October 29, 2019, Dr. MacConnell removed the gum tissue over the implants and tried to fit dentures to the implants. Ms. Price reported experiencing pain from these procedures. One of the dentures was caught on an implant abutment and had to be sent back to the lab for revisions. After this appointment, Ms. Price experienced neck pain, which she attributed to the force used by Dr. MacConnell to remove the denture that had been caught on the abutment. She consulted a nurse practitioner concerning her pain on November 5, 2019.

On December 9, 2019, Ms. Price saw Dr. MacConnell to receive upper and lower wax rims. Dr. MacConnell made adjustments to the wax rims and placed an order for the lab to construct a wax set with metal reinforcement. On February 4, 2020, Ms. Price saw Dr. MacConnell again to try the new set of teeth. She was disappointed with how the new set of teeth looked and fit and expressed her dissatisfaction to Dr. MacConnell. Later that month, Ms. Price consulted two other dentists, who advised her that teeth could not be made to fit the existing implants. She discontinued treatment with the Center.

On December 8, 2020, Ms. Price sent pre-suit notice to the Center and Dr. MacConnell. She and her husband filed a health care liability suit against the Center and Dr. MacConnell on February 22, 2021, alleging that Dr. MacConnell, acting as an employee or agent of the Center, acted negligently in performing dental implant procedures on June 6, 2019. The complaint specifically alleges, in pertinent part, as follows:

> 25. As it relates to the June 6, 2019 procedure Dr. Andrew MacConnell, D.D.S., committed dental malpractice as the upper implants were placed improperly since the posterior implants are positioned too distal as opposed to the anterior implants.
> 26. As it relates to the June 6, 2019 procedure Dr. Andrew MacConnell, D.D.S., committed dental malpractice as the upper implants are divergent and not parallel to each other which will cause the locator attachments to wear much quicker as well as not provide adequate retention of the denture.
> 27. As it relates to the June 6, 2019 procedure Dr. Andrew MacConnell, D.D.S., committed dental malpractice as the upper implants are visible in her smile line.
> 28. As it relates to the June 6, 2019 procedure Dr. Andrew MacConnell, D.D.S., committed dental malpractice as the lower implants . .

. also were not in proper positions since they also are visible in Plaintiff, Darlene Ann Price's smile line. The implant positions as placed caused the dentures which not only have to accommodate the teeth but also provide room for the attachments which causes her "Freeway space" to be infringed upon resulting in an increased "Vertical Dimension" of occlusion. This would cause her to have a "full" mouth with difficulty to breath while wearing the dentures provided by Dr. Andrew MacConnell, D.D.S.

29. As it relates to the June 6, 2019 procedure Dr. Andrew MacConnell, D.D.S., committed dental malpractice as Plaintiff, Darlene Ann Price, required additional surgeries to include taking out the upper and lower implants and placing new upper and lower implants in a more proper position and fabricating new upper and lower dentures.

Dr. MacConnell was voluntarily dismissed as a defendant in March 2021, and the case proceeded against the Center.

In its answer to the complaint, the Center denied the allegations of paragraphs 25 through 29 and went on to give further details concerning the treatment provided to Ms. Price by Dr. MacConnell. The Center's response to paragraph 28 includes the following statements:

The final set of removable upper and lower partial dentures—which address the vertical dimension of occlusion, airway issues, and freeway space—were never delivered to complete plaintiff-Darlene's care because plaintiff-Darlene never returned. However, these final teeth were tried in to verify that all of the above concerns had been correctly addressed for proper fit, function, esthetics, and contour. Unfortunately, plaintiff-Darlene abandoned her care toward the end of her treatment, which continued her history of oral neglect. Accordingly, Plaintiff-Darlene does not have her final teeth from defendant because she never picked them up.

The Center filed a motion for summary judgment in July 2022, arguing that pre-suit notice was sent more than one year after Ms. Price's injury. In support of its motion, the Center submitted an affidavit of Dr. MacConnell and a statement of material facts. In his affidavit, Dr. MacConnell responded to statements made by Ms. Price during her deposition. In response to Ms. Price's statements that she experienced pain, bleeding, swelling, and vibration to her face after the initial surgery in June 2019, Dr. MacConnell explained that the vibration described by Ms. Price "is an inherent part of her oral surgery in extracting teeth and removing crowns." After a second surgical procedure on October 29, 2019, to uncover the gum tissue covering the implants, Ms. Price reported being alarmed by the large needle Dr. MacConnell used and complained of neck pain after the procedure. Dr. MacConnell explained that "Darlene's denture locked onto an undercut on one of her abutments," which required him to remove the denture. He further stated that,

- 3 -

"While this is undesirable, it occasionally happens that a denture gets caught on an abutment's undercut."

The plaintiffs responded in opposition to the Center's motion for summary judgment and submitted a response to the Center's statement of material facts supported by an affidavit of Ms. Price. In their response, the plaintiffs made a statement of additional facts relied upon by the plaintiffs. In paragraph 10, the plaintiffs referenced the informed consent forms Ms. Price signed in which she was "advised that certain side effects were normal and to be expected from the surgery even if done within professional standards for the community." In paragraph 12, the plaintiffs cited the following language from one of the consent forms:

> It has been explained to me that there are certain inherent and potential risks in any treatment or procedure, and that in this specific instance such operative risks include, but are not limited to: swelling; pain; bruising; breakage of the jaw; stretching of the corners of the mouth . . . . ; possible nerve injury with resulting change in sensation . . . . ; infection; damage to adjacent teeth, nasal cavity, sinuses; and failure of the implants to heal (Intestate) with the surrounding bone . . . .

The plaintiffs averred that Ms. Price was warned that, after the initial dental surgery, there would be "a healing period of between 3 to 6 months," after which there would be a second surgery "to remove the gum tissue overlying the top of the implant to insert an additional piece (the abutment) into the top of the implant."

The plaintiffs further stated:

> 14. Dr. MacConnell on February 4th, 2020, told Ms. Price that he could not make me look like a picture she pointed to of an attractive lady on the wall. He also told her he was going to try to make me one more set of teeth and if they didn't work that he wasn't sure how to proceed.
> 15. Because Dr. MacConnell [was] so rude and insulting to her about her desired appearance of the teeth, PLAINTIFF decided to see another Dentist and went to see Dr. Popper. When PLAINTIFF saw Dr. Popper on February 11th, 2020 [it] was the first time PLAINTIFF had any idea that the post was not done correctly and teeth could not be made to fit the post.
> . . .
> 17. . . . [Dr. MacConnell] told PLAINTIFF Price [she] was a difficult -patient and unreasonably hard to please.
> 18. [Dr. MacConnell] told Plaintiff Price that he had [bent] over backwards to try to please [her] but that [her] expectations were unreasonable.

19. . . . Even at the time PLAINTIFF went to see Dr. Popper, PLAINTIFF had no knowledge nor was she put on notice that anything was not done professionally in [her] treatment and was motivated by his rudeness to seek another professional not by fear of him not doing the treatment according to professional standards. She was assured by Dr. MacConnell [her] pain and his treatment of [her] was just part of the process.

20. As to her neck injury on October 29th, 2019, PLAINTIFF was not sure of what caused the neck injury and it was possibly injured by Dr. MacConnell's removal of a wax try-in when it seemed to get stuck. It resolved in less than two weeks as have other sore necks during [her] life. PLAINTIFF was disappointed in [her] neck hurting but was not under the impression anything about the injury to [her] neck affected the implants procedure.

21. PLAINTIFF never received permanent teeth from Dr. MacConnell.

22. PLAINTIFF went into see him December 9th, 2019, for upper and lower wax rims. The Doctor took photographs of [her] teeth and adjusted the wax rims. He took a bite registration also.

23. Dr. MacConnell on December 9th, 2019 said he was going to send the wax rims to the lab to construct upper and lower wax try-in teeth.

24. PLAINTIFF had told him that PLAINTIFF needed as little palatal [sic] as possible and he asked the laboratory to change the teeth to remove as much of the palatal as possible on December 9th, 2019.

25. PLAINTIFF went back to him on December 23d, 2019 because the gold [locator] cap had come off [her] teeth. Dr. MacConnell replaced the locator cap and cleaned the lower implants.

26. On February 4th[,] 2020, PLAINTIFF went in for the wax try-ins.

27. The teeth looked out of line and did not leave [her] enough room for [her] tongue. PLAINTIFF did not think the teeth looked like they were supposed to as represented to [her] by Dr. MacConnell.

28. Dr. MacConnell became very angry with [Ms. Price] it appeared and told [her] that [her] expectations did not match reality and that PLAINTIFF was too hard to please. PLAINTIFF pointed to a picture of an attractive woman on his wall with a pretty smile and [he] said he could not make [her] look like "something PLAINTIFF wasn't." He then told [her] that if PLAINTIFF didn't like these try-ins, that he didn't know what he could do about it. He said he was going to make one more try and that was it. He said at this time he "was tired of fooling with my ass" and was going to make one more set of [sic], he was done with it PLAINTIFF did not like it.

29. [Dr. MacConnell's] anger with Plaintiff and rudeness motivated her to go see Doctors Popper and Yallourakis who both told [her] that teeth could not be made to fit [her] mouth due to the existing implant placement.

(Citations to Ms. Price's affidavit and deposition omitted).

The exhibits attached to Ms. Price's affidavit include a March 20, 2020 letter from Dr. MacConnell requesting that she reschedule a "try in appointment for your upper and lower removable acrylic wrapped over metal framed upper and lower removable dentures." The letter included the following numbered statements:

1. I need to verify the cosmetic corrections that you requested at your last appointment on 2-4-2020.
2. Your teeth have been re-set in wax on the custom metal frame substructures with these changes and we need to make sure the changes we made on your models are the same when you are wearing these teeth.
3. *Once verified we need to process, finish, and complete your prosthesis and convert them from wax to acrylic to complete your treatment.*
4. Your oral condition is now in a state of health, a big improvement from the initial condition you were in that we reviewed at your last appointment.

(Emphasis added).

Thereafter, the Center filed a response to the additional facts relied upon by Ms. Price and another affidavit of Dr. MacConnell. The Center's response to paragraph 14 of the plaintiffs' additional facts was: "Undisputed for the purposes of the Motion for Summary Judgment only." The Center disputed the plaintiffs' statement, in paragraph 21 of the plaintiffs' additional facts, that Ms. Price "never received permanent teeth from Dr. MacConnell." The Center stated that Ms. Price received "her first set of permanent dentures" on November 7, 2019. According to the Center, Ms. Price went to the appointment on December 9, 2019 "in the process of making Darlene's second set of permanent dentures."

In response to paragraph 15 of the plaintiffs' additional facts, the Center disputed that, prior to her appointment on February 11, 2020, Ms. Price was unaware her "teeth could not be made to fit the post." To support its position, the Center referenced Dr. MacConnell's affidavit in which he stated that Ms. Price began wearing an upper temporary denture on July 3, 2019, a lower temporary denture on August 12, 2019, and her first set of permanent dentures on November 7, 2019. The Center cited statements from Ms. Price's deposition testimony to the effect that "Darlene's dentures did not fit or were falling out of her mouth in the **summer of 2019**." The Center also cited deposition testimony from Ms. Price's husband, several grandchildren, her son-in-law, her daughter, and a neighbor indicating that Ms. Price's dentures would fall out of her mouth in the summer of 2019.

- 6 -

After taking Dr. MacConnell's deposition, the plaintiffs filed a Supplemental Response to Defendants Statement of Material Facts ("Supplemental Response"). The Center then filed a response ("Center's Response") to the Supplemental Response. The following are pertinent statements from the Supplemental Response and the corresponding statements from the Center's Response:

35. Defendant felt he had gotten excellent results from his treatment of Plaintiff and informed [her] of this in February 2020.
RESPONSE: Undisputed. (Immaterial this was **after** December 8, 2019).

. . .

41. On December 9th, 2020 [Ms. Price] was in the "wax try-in stage."
RESPONSE: Undisputed Darlene was in the wax try-in stage. [Omitted notation regarding a typographical error in the Supplemental Response]. (Immaterial: this was **after** December 8, 2019. In addition, this was Darlene's second set of permanent dentures because Darlene was dissatisfied with her first set of permanent dentures. Dr. MacConnell placed Darlene's first set of permanent dentures—with which Darlene was dissatisfied—on November 7, 2019).

. . .

43. On November 7th, 2019 Plaintiff was told that her muscles needed to get used to having something in her mouth and she made a follow up appointment [for] December 9th, 2019.
RESPONSE: Undisputed. (Immaterial: November 7, 2019 is when Darlene received her first set of permanent dentures with which Darlene was immediately dissatisfied. The December 9, 2019 appointment took place to start fitting Darlene's second set of permanent dentures because Darlene was so dissatisfied with her first set of permanent dentures.).

. . .

50. The final set of teeth were not even made until after December 9th, 2020.
RESPONSE: Undisputed. (Immaterial: this was **after** December 8, 2019).
51. Defendant expected the changes he made December 9th, to help the Plaintiff.
RESPONSE: Undisputed. (Immaterial: the issue for the purposes of the statute of limitations is what **Darlene** knew and when she knew it, **not**

what **"Defendant"** knew. After the removal of Darlene's teeth and placement of implants on June 6, 2019, "nothing we did satisfied her.")

. . .

54. Defendant felt that the final set of teeth he ordered would have been an improvement over prior sets.
RESPONSE: Undisputed regarding the second permanent denture. (Immaterial: this was **after** December 8, 2019. Also, the issue for the purposes of the statute of limitation is what **Darlene** knew and when she knew it, **not** what **"Defendant"** knew.)
55. The final set was still a wax try-in.
RESPONSE: Undisputed regarding the second permanent denture, which was a "wax" try-in. (Immaterial: this was **after** December 8, 2019.)

(Citations to depositions and affidavits omitted). The Center did not dispute Ms. Price's report that her neck pain from the October 29, 2019 appointment resolved before her next appointment.

The trial court heard the motion for summary judgment on June 28, 2023, and entered a final judgment on July 7, 2023. The court granted the Center's motion on the ground that Ms. Price's "cause of action arose before December 8, 2019." Because the pre-suit notice was sent on December 8, 2020, "the Court concludes that there is no genuine issue as to any material fact regarding the statute of limitations and that defendant is entitled to a judgment as a matter of law." The hearing transcript was incorporated by reference in the court's order. In ruling in favor of the Center, the trial court stated from the bench:

I find in this case that Darlene has numerous witnesses and a specific allegation in the Complaint regarding the—the dentures would fall out repeatedly in the summer of 2019 and the neck injury of the—October 29th, 2019, all of which happened prior to the December 8th of 2019. Because plaintiff's pre-suit notice is dated December 8, 2020 the statute of limitations had expired and there is no issue of material fact, and defendant is entitled to a judgment of law.

The plaintiffs have appealed, raising the issue of whether the trial court erred in granting the Center's motion for summary judgment because an issue of material fact remains as to when Ms. Price discovered her cause of action.

STANDARD OF REVIEW

We review a trial court's summary judgment determination de novo with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d

- 8 -

235, 250 (Tenn. 2015). This standard of review means that "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* We "must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor." *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *see also Acute Care Holdings, LLC v. Houston Cnty.*, No. M2018-01534-COA-R3-CV, 2019 WL 2337434, at \*4 (Tenn. Ct. App. June 3, 2019).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. A disputed fact is material if it is determinative of the claim or defense at issue in the motion. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). When a party moves for summary judgment but does not have the burden of proof at trial, the moving party must submit evidence either "affirmatively negating an essential element of the nonmoving party's claim" or "demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264 (emphasis omitted). Once the moving party has satisfied this requirement, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Id.* at 265 (quoting TENN. R. CIV. P. 56.06). Rather, the nonmoving party must respond and produce affidavits, depositions, responses to interrogatories, or other discovery that "set forth specific facts showing that there is a genuine issue for trial." TENN. R. CIV. P. 56.06; *see also Rye*, 477 S.W.3d at 265. If the nonmoving party fails to respond in this way, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." TENN. R. CIV. P. 56.06. If the moving party fails to show that he or she is entitled to summary judgment, however, "'the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails.'" *Martin*, 271 S.W.3d at 83 (quoting *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).

## ANALYSIS

We must consider whether the trial court erred in concluding that there were no genuine issues of material fact and that the Center was entitled to judgment as a matter of law. More particularly, the issue is whether there remain genuine issues of material fact relevant to the application of the discovery rule in this case.

Ms. Price filed her case under the Tennessee Health Care Liability Act, Tenn. Code Ann. §§ 29-26-101-122. Pursuant to Tenn. Code Ann. § 29-26-116(a)(1), the applicable statute of limitations is one year. In the event the plaintiff does not discover the injury within one year of the negligent act (or omission), "the period of limitation shall be one (1) year from the date of such discovery." Tenn. Code Ann. § 29-26-116(a)(2). Our Supreme

Court has further clarified that, under the discovery rule, a health care liability action "accrues when one discovers, or in the exercise of reasonable diligence should have discovered, both (1) that he or she has been injured by wrongful or tortious conduct and (2) the identity of the person or persons whose wrongful conduct caused the injury." *Sherrill v. Souder*, 325 S.W.3d 584, 595 (Tenn. 2010). Thus, the cause of action accrues "when a plaintiff acquires actual knowledge of a claim" or "upon a plaintiff's constructive or inquiry notice of a claim." *Daffron v. Mem'l Health Care Sys., Inc.*, 605 S.W.3d 11, 20 (Tenn. Ct. App. 2019). As this Court has stated, "The relevant inquiry is when Plaintiffs became aware of facts sufficient to put a reasonable person on notice that he or she has suffered an injury as a result of the [defendants'] wrongful conduct." *Karr v. Saint Thomas Midtown Hosp.*, No. M2020-00029-COA-R3-CV, 2021 WL 457981, at *4 (Tenn. Ct. App. Feb. 9, 2021).

The Health Care Liability Act also provides that a plaintiff "shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state." Tenn. Code Ann. § 29-26-121(a)(1). Compliance with the pre-suit notice requirement extends the applicable statute of limitations for 120 days. Tenn. Code Ann. § 29-26-121(c). Therefore, the question in this case is whether Ms. Price sent her pre-suit notice within one year of discovering she had a right of action against the Center.[2]

The issue of whether a plaintiff "'exercised reasonable care and diligence in discovering the injury or wrong is usually a question of fact.'" *Sherrill*, 325 S.W.3d at 596 (quoting *Shadrick v. Coker*, 963 S.W.2d 726, 737 (Tenn. 1998)). Our courts have stated that, "'where the resolution of the issue depends upon the question of whether due diligence was exercised under the circumstances, and where differing inferences might reasonably be drawn from the uncontroverted facts, the issue is not appropriate for summary judgment.'" *Id.* at 597 (quoting *Hathaway v. M. Tenn. Anesthesiology, P.C.*, 724 S.W.2d 355, 360 (Tenn. Ct. App. 1986). Thus, we may affirm the trial court's grant of summary judgment only if "the facts in the record and all reasonable inferences demonstrate that [Ms. Price's] cause of action accrued" on or prior to December 8, 2019 (one year prior to her pre-suit notice being sent). In making this determination, we must "consider the evidence in the light most favorable to the non-moving party and must resolve all reasonable inferences in the non-moving party's favor." *B & B Enters. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839, 845 (Tenn. 2010).

As stated above, the question is when Ms. Price discovered, "or in the exercise of reasonable diligence should have discovered, both (1) that . . . she has been injured by wrongful or tortious conduct and (2) the identity of the person or persons whose wrongful

---

[2] A plaintiff's failure to comply with the statute of limitations is an affirmative defense and, therefore, the defendant bears the burden of proof on the issue. *Sherrill*, 325 S.W.3d at 596 (citing TENN. R. CIV. P. 8.03).

conduct caused the injury." *Sherrill*, 325 S.W.3d at 595. Ms. Price asserts that, viewed in the light most favorable to her, the evidence establishes that she could not reasonably have discovered her cause of action until Dr. MacConnell first placed the "final" set of wax rims in her mouth on February 5, 2020, or when Dr. Popper informed her on February 11, 2020, that it was not possible to make dentures to fit the implants as Dr. MacConnell had positioned them in her mouth.

In arguing in favor of the trial court's decision, the Center asserts as follows:

> Darlene [Price] admittedly was aware of various injuries—such as pain, bleeding, swelling, vibration in her face, pain and blisters caused by "wax," pain caused by uncovering bottom implants, and a neck injury when Dr. MacConnell removed Darlene's denture which was caught on an implant abutment—multiple times between June 6, 2019 and November 6, 2019. Darlene was also dissatisfied with her treatment on multiple occasions between June 6, 2019 and November 6, 2019. By Darlene's own testimony, the statute of limitations began to run sometime between June 6, 2019 and November 6, 2019.

In addition, the Center asserts that, based upon the undisputed testimony, Ms. Price "was reasonably aware her dentures were falling out of her mouth in the summer of 2019." Based upon these problems reported by Ms. Price, the Center argues that the statute of limitations began to run before December 8, 2019.

The Center's arguments are based upon an erroneous understanding of the discovery rule. As the Center emphasizes, inquiry notice does not require "'that the plaintiff actually know that the injury constitutes a breach of the appropriate legal standard in order to discover that he has a "right of action."'" *Sherrill*, 325 S.W.3d at 593 (Tenn. 2010) (quoting *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994)). Instead, "'the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct.'" *Id.* (quoting *Roe*, 875 S.W.2d at 657). The wrongful or tortious conduct alleged by Ms. Price is Dr. MacConnell's improper placement of the implants on June 6, 2019. The Center counters that, despite Ms. Price's "confining" her claim to the improper placement of the implants, her complaint and the uncontradicted evidence "describe injuries in the course of the dental-implant treatment beginning on June 6, 2019." This reasoning conflates the issue of when Ms. Price had reason to know that Dr. MacConnell had done something wrong with her experiencing unpleasant sensations during treatment.

The "injuries" relied upon by the Center—pain and swelling, blisters, vibration, and a neck injury—were side effects of the extractions and implant placement procedures and included in the risks to which Ms. Price consented prior to Dr. MacConnell's treatment. According to Ms. Price's uncontroverted deposition testimony, when she reported these

- 11 -

problems to Dr. MacConnell, he assured her that these were expected side effects and that her treatment was proceeding normally. The plaintiffs assert that it was not until, at the earliest, February 5, 2020, when Ms. Price first saw how the wax try-ins looked and was dissatisfied with their appearance, that she had any reason to suspect that there might be a problem with Dr. MacConnell's treatment. Shortly thereafter, she learned from two other dentists that the implants were not positioned properly.

The record contains conflicting evidence as to when the dentures presented to Ms. Price were sufficiently "final" to put her on notice of a potential problem with the implants. In one of its responses to the plaintiffs' statements of material fact, the Center took the position that the wax dentures presented to Ms. Price on November 7, 2019, were a "first set of permanent dentures." In a subsequent response, the Center did not dispute that, "The final set of teeth were not even made until after December 9, [2019]." In his deposition testimony, Dr. MacConnell stated that Ms. Price came for an appointment on December 9, 2019, "for upper and lower wax rims for her mini implants." Dr. MacConnell adjusted the rims and sent them to the lab with instructions to "construct upper and lower wax rims try-in" on metal. At her next visit, which ended up being in February 2020, Ms. Price would try in the new set. In his testimony, Dr. MacConnell agreed that "there would be no way she would know whether they fit or not until she tried them in." We find it significant that, in a letter to Ms. Price dated March 10, 2020, Dr. MacConnell advised her that her teeth as corrected at the February 2020 appointment had been "re-set in wax on the custom metal frame substructures" and that she needed to return so that he could make sure the changes fit when she wore the teeth. Then, Dr. MacConnell stated, he would "need to process, finish, and complete your prosthesis and convert them from wax to acrylic to complete your treatment."

In response to the above reasoning, the Center asserts, "Plaintiffs may not split their cause of action." In explaining this position, the Center argues that "the various injuries plaintiffs allege all arose out of the provision of 'health care services'" and that "Plaintiffs may not separate the injuries into isolated healthcare injuries and non-healthcare injuries in the course of her dental implant treatment." In order for Ms. Price's right of action to accrue under the discovery rule, however, she must have had constructive notice that she "has suffered an injury as a result of the [defendants'] wrongful conduct." *Karr*, 2021 WL 457981, at *4. Until Ms. Price was aware of facts suggesting that Dr. MacConnell had acted wrongfully in his performance of the dental implant procedures, she did not have constructive notice of an injury for purposes of the discovery rule. As explained above, the "injuries" upon which the Center relies were normal side effects of the treatment.

The cases cited by the Center in support of its theory are distinguishable. In *Jackson v. Vanderbilt University Medical Center*, No. M2022-00476-COA-R3-CV, 2022 WL 16545403, at *1 (Tenn. Ct. App. Oct. 31, 2022), the plaintiff sued the hospital for negligence in the treatment of her family member, and the trial court granted the hospital's motion to dismiss based upon the expiration of the statute of limitations. On appeal, this

Court affirmed the trial court's decision because there was no set of facts that would entitle the plaintiff to recovery. *Jackson*, 2022 WL 16545403, at *7. Significantly, the court observed that there was nothing in the complaint or argument suggesting "that by August 24, 2020, [the patient] did not, at least, have 'information sufficient to alert a reasonable person of the need to investigate "the injury."'" *Id.* at *6 (quoting *Durham v. Est. of Losleben*, 624 S.W.3d 492, 499 (Tenn. Ct. App. 2020)). In the present case, by contrast, there are facts in dispute that suggest that Ms. Price did not have sufficient information until after December 8, 2019.[3]

The Center also asserts that Ms. Price "may not escape the effect of the statute of limitations by impeaching herself with an affidavit which contradicts her deposition testimony." The argument here is that Ms. Price's sworn statements—such as that she "felt like I'd been beaten to death" soon after the implant process began on June 6, 2019—contradict her deposition testimony that she was unaware of problems with Dr. MacConnell's work until February 2020. There is no contradiction. Ms. Price could experience the discomfort associated with dental treatment from the beginning and not have reason to think Dr. MacConnell had acted wrongfully until she saw how the final or near-final product looked and then learned from other dentists that the implants were improperly placed. The Center also cites the deposition of Ms. Price's husband, grandchildren, and other family members, who said that her dentures were falling out in the summer of 2019. These dentures were not the final product. The implants remained under the gums until October 2019. Ms. Price testified that she was advised that it was not unusual for the temporary dentures to fall out. Again, there is no contradiction in the testimony.

We respectfully disagree with the trial court's conclusion that there are no genuine issues of material fact concerning the date of Ms. Price's discovery of her right of action. Viewing the evidence in the light most favorable to the plaintiffs, we conclude that there remain genuine issues of material fact and that the trial court erred in granting summary judgment to the Center.[4]

---

[3] *Cooper v. Mandy*, 639 S.W.3d 29 (Tenn. 2022), another case cited by the Center, involved claims of medical battery and intentional misrepresentation, and the Court held that those claims fell within the definition of a health care liability action. In the present case, there is no dispute that Ms. Price's claim falls within the definition of a health care liability action.

[4] This Court is aware of similar cases from other jurisdictions in which courts have reached results consistent with ours. *See Shaut v. Robinwood Dental Ctr.*, No. C-21-CV-18-000773, 2021 WL 3468071, at *11 (Md. Ct. Spec. App. Aug. 6, 2021) (holding that the lower court erred in granting summary judgment because a dental patient was not on inquiry notice of a claim simply because his tongue was numb after surgery); *Pigott v. Taylor*, 230 So.3d 754, 759 (Miss. Ct. App. 2017) (affirming lower court's grant of summary judgment based upon a finding that the statute of limitations began to run no later than the date when the dental implant patient consulted a pain management specialist who diagnosed trigeminal neuralgia secondary to dental trauma and pain that began with implant surgery); *Fine v. Checcio*, 870 A.2d 850, 861 (Pa. 2005) (reversing grant of summary judgment because genuine issues of material facts remained as to

CONCLUSION

The judgment of the trial court is reversed and the case is remanded. Costs of this appeal are assessed against the appellee, the Center for Family and Implant Dentistry, PLLC, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE

when the patient reasonably could have known that the facial numbness he experienced after the removal of his wisdom teeth was a manifestation of injury, as opposed to a typical consequence of dental surgery).